UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| JERONICA PHILLIPS, | : Case No. 2:24-cv-3900 |
| Plaintiff, | : |
| vs. | : District Judge James L. Graham |
| | : Magistrate Judge Peter B. Silvain, Jr. |
| ANNETTE CHAMBERS-SMITH, *et al.*, | : |
| Defendants. | : |

## REPORT AND RECOMMENDATION[1]

Plaintiff, an Ohio state prisoner who is currently incarcerated at the Richland Correctional Institution in Mansfield, Ohio, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The factual allegations forming the basis of Plaintiff's complaint are alleged to have occurred during Plaintiff's incarceration at the Correctional Reception Center ("CRC") in Orient, Ohio, and Plaintiff names as Defendants Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Corrections; Jossette Okereke, Warden of the CRC; James Harris, Captain at CRC; Jane or John Doe I, employee and/or corrections officer at CRC; Jane Doe II, nurse/medical staff at CRC; and Lieutenant Holtz, also of CRC. (Doc. 1-1, at PageID #s 8-9). All Defendants are sued in both their individual and official capacities.

By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis*. This matter is now before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

## Screening of Plaintiff's Complaint

### A.    Legal Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(2)[2] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> * * *
>
> (B) the action or appeal –
>
> (i)    is frivolous or malicious;
>
> (ii)   fails to state a claim on which relief may be granted; or
>
> (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

---

[2] Formerly 28 U.S.C. § 1915(d).

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Fed. R. Civ. Pro. 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits;

"'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

B. **Allegations in the Complaint**

Plaintiff brings this action in connection with a slip and fall incident inside his cell at the CRC. Plaintiff alleges that on January 28, 2024, he notified corrections officers that the ceiling of his cell was "leaking profusely" and requested a mop. (Doc. 1-1, Complaint, at PageID #9.) Plaintiff took a nap, and when he awoke for lunch, he "slipped in a puddle of water that now covered the cell floor." (*Id*.) Plaintiff hit his head on the floor and feared he had torn sutures from a recent back surgery. (*Id*.) Plaintiff stayed on the floor "dizzy in pain for approximately 20 minutes" and was then "picked up" by an unnamed corrections officer and Lieutenant Holtz, "contrary to medical protocol, and transported to Medical." (*Id*.) At medical, Plaintiff's vitals were checked, his back was examined, and he was informed he could return to medical hourly if needed. (*Id*. at PageID #s 10, 14.) Plaintiff alleges he was then "placed in the hole for medical observation which was later changed to refusing lock ([w]hich means [he] refused to return to the flooded cell)." (*Id*. at PageID #10.)

Plaintiff seeks monetary damages against all Defendants as well as injunctive relief "ordering Defendant's to cease their illicit acts towards plaintiff herein." (*Id*. at PageID #11.)

C. **Analysis of the Complaint**

1. *Defendants Chambers-Smith and Okereke*

As an initial matter, the complaint should be dismissed against Defendants Annette Chambers-Smith, director of ODRC, and warden Josette Okereke. Although these Defendants are listed as Defendants in the complaint (*See* Doc. 1-1, Complaint at PageID #s 7-8), the complaint

4

does not include any factual allegations against Chambers-Smith or Okereke. Absent any allegation of wrongdoing, Plaintiff has failed to state a claim upon which relief can be granted against these Defendants.

To the extent Plaintiff seeks to hold Defendants Chambers-Smith and Okereke liable for their failure to correct the various allegations contained in the complaint, it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Plaintiff has not alleged any facts suggesting that Defendants Chambers-Smith or Okereke directly participated in and/or authorized, approved, or acquiesced in the alleged violations of his constitutional rights. The mere fact that these Defendants hold supervisory positions is not enough to impose liability on them under § 1983.

2. *Official Capacity Claims for Money Damages*

All of the claims against Defendants in their official capacities for money damages require dismissal. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman*

5

*v. Jordan*, 415 U.S. 651, 673 (1974).  The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.  *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982).  The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state.  *Edelman*, 415 U.S. at 663; *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002).  A suit against defendants in their official capacities would, in reality be a way of pleading the action against the entity of which defendants are agents.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  Thus, actions against state officials in their official capacities are included in this bar.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation omitted)).  Therefore, Defendants are immune from suit in their official capacities to the extent Plaintiff seeks monetary relief, and Plaintiff's claims seeking money damages must be dismissed against all Defendants on this basis.

       3.   *Claims Seeking Injunctive Relief*

To the extent Plaintiff seeks injunctive relief ordering Defendants "to cease their illicit acts" against him, the Court notes that Plaintiff is no longer being housed at the CRC and has since been transferred to Richland Correctional.  Because plaintiff is no longer incarcerated at the CRC—the place where the alleged violations of his rights occurred—his request for injunctive relief against defendants is denied as moot.  *See Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir.

2013) (per curiam) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)) (holding that the district court properly dismissed plaintiff's request for injunctive and declaratory relief based on incidents that had occurred at a prison facility where he was previously confined because the request was rendered "moot upon his transfer to a different facility"); *cf. Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (holding that request for injunctive relief based on Eighth Amendment claim of denial of medical care was rendered moot by plaintiffs' release from the prisons involved in the case).

### 4. Deliberate Indifference Claims

Plaintiff asserts that Defendants were "completely negligent and deliberately indifferent to his safety and medical needs." (Doc. 1-1, at PageID #11.) The Court construes Plaintiff's claims as ones brought under the Eighth and Fourteenth Amendments for deliberate indifference to his safety and serious medical needs.

A plaintiff may bring a § 1983 action alleging his safety is endangered due to the conditions of his confinement only by showing that the prison officials acted with "deliberate indifference" to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). Deliberate indifference is a much higher standard than negligence and requires establishing both objective and subjective components of a claim. *Id*. at 834. That is, the risk of harm to the prisoner must have been objectively serious enough to require constitutional protection, and the plaintiff must also show that the official being sued "'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Rouster v. County of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, accepting all the facts in Plaintiff's complaint as true and construing all inferences in his favor, the Court cannot find that Plaintiff has demonstrated that the risks he faced were sufficiently serious to require constitutional protection.  Courts in this Circuit "have routinely held that 'slip and fall' claims typically assert only negligence, which is insufficient to set out a valid §1983 claim."  *Henderson v. Lincoln County Jail*, Case No. 4:23-cv-52, 2024 WL 268404 (E.D. Tenn. Jan. 24, 2024) (Atchley, D.J.).  In *Lamb v. Howe*, 677 F. App'x 204 (6th Cir. 2017), the Sixth Circuit considered similar facts.  There, Lamb's cell was flooded with several inches of toilet water from a neighboring cell.  Lamb notified corrections officers.  Several hours later, while trying to sidestep the water in his cell, Lamb slipped and hit his head.  *Id*. at 206.  He was transported to the hospital and received six stitches.  Thereafter, Lamb filed suit pursuant to 42 U.S.C. § 1983, alleging corrections officers violated his Eighth and Fourteenth Amendment rights by being deliberately indifferent to his right to be free from cruel and unusual punishment.  The district court dismissed Lamb's complaint during the initial screen, finding his allegations, even when liberally construed, did not state a claim upon which relief could be granted. *Id.*  The Sixth Circuit affirmed, noting as follows:

> Accepting all facts in Lamb's complaint as true, and construing all inferences in his favor, he has not demonstrated that the risk he faced was sufficiently serious.  Lamb's allegation is, in its essence, a slip-and-fall claim.  Mere negligence is not sufficient to violate the Eighth Amendment, *Farmer*, 511 U.S. at 835, and the federal courts have nearly unanimously held that a "slip and fall, without more, does not amount to cruel and unusual punishment." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (internal quotations and citations omitted); *see also Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (dismissing for failure to state a claim a prisoner's complaint alleging unconstitutional conditions of confinement where the prisoner was deprived of a working toilet and was subjected to a flooded cell); *White v. Tyszkiewicz*, 27 Fed.Appx. 314, 315 (6th Cir. 2001) (dismissing a prisoner's complaint alleging deliberate indifference where prisoner slipped and fell on ice); *Bell v. Ward*, 88 Fed.Appx. 125, 127 (7th Cir. 2004) (finding no § 1983 violation where prisoner claimed that officials were aware of slippery conditions created by other prisoners but took no action to remedy the problem, and where the prisoner slipped and fell

8

due to those conditions); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (holding that slippery prison floors "do not state even an arguable claim for cruel and unusual punishment") (quoting *Jackson v. Arizona*, 885 F.2d 639, 644 (9th Cir. 1989)).

Lamb alleges that federal courts have found that slippery floors may be sufficiently dangerous to create a potential constitutional violation "where a slippery prison floor is combined with one or more exacerbating factors." (Appellant Br. at 30–31.) Lamb lists four exacerbating factors that he asserts support his deliberate-indifference claim. First, he alleges that the slippery condition here is different than in many of the other slip-and-fall cases because it occurred in an area that is not normally wet. Second, he claims that the slippery condition was exacerbated by darkness. Third, Lamb claims that his repeated warnings to the guards indicate the risk was serious. And lastly, he argues that the water covering his floor was unsanitary toilet water rather than potable water and that this fact is sufficiently exacerbating to warrant reversing the district court's dismissal.

It is true that courts have occasionally found that a slip-and-fall case that has additional exacerbating factors can create a plausible allegation of constitutional harm. *See Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (holding that where the plaintiff was disabled, had to use crutches, and had fallen many times due to slippery conditions in the shower, and prison officials were aware of all of these facts, the plaintiff could potentially state a deliberate-indifference claim). But Lamb's case lacks sufficient exacerbating factors to survive even motion-to-dismiss review. Despite his attempt to differentiate this case because the slippery condition occurred in his cell rather than a normally wet area, such as a shower, this circuit has found that a temporarily flooded cell is insufficient to state a claim under the Eighth Amendment. *See Dellis*, 257 F.3d at 511. Further, even assuming it was dark the entire time from when the flooding began at 7 p.m. until when Lamb fell at 11 p.m., this fact does not create unconstitutional conditions of confinement. Lamb was aware of the flooding in his cell, and he does not allege that the guards failed to notify him of the condition. Accordingly, it is hard to see how the darkness could have contributed further to the risk that he faced.

*Id*. at 208-09.

Similarly, Plaintiff in this case has not demonstrated that the risk he faced was sufficiently serious to trigger the Eighth or Fourteenth Amendments. Plaintiff's complaint at most alleges that Defendants were negligent in their duty to protect him from a hazardous condition. Plaintiff has set forth what amounts to an unfortunate but commonplace slip-and-fall incident, and his

9

circumstances lack the type of exacerbating factors that the rare court has found sufficient to survive an initial screening review. Like Lamb, Plaintiff was aware of the flooding in his cell prior to his fall. The only potentially exacerbating factor alleged in the complaint is that Plaintiff had surgery prior to his incarceration and was placed on a "bottom bunk-lower range medical restriction." (Doc. 1-1, at PageID #9). But the mere existence of this restriction does not establish that Plaintiff lacked the faculties to avoid a slip and fall, or that prison officials should have known there was a substantial risk that he would be unable to do so. To the contrary, Plaintiff saw the water, alerted corrections officers to its presence, and requested a mop—presumably to handle the situation himself. The incident happened shortly before lunch and Plaintiff does not allege his cell was dark or that he could not otherwise see the hazard. At base, Plaintiff has alleged a temporary inconvenience and potential negligence which is insufficient to elevate this slip-and-fall claim to one of deliberate indifference to Plaintiff's safety.

The same is true of Plaintiff's claim of deliberate indifference to his serious medical needs. To demonstrate a violation of the Eighth Amendment regarding his medical treatment, Plaintiff must show a "sufficiently serious" medical need to which Defendants responded with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

Again, there is both an objective and a subjective component to this type of claim. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind" that is "tantamount to intent to punish." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (citing *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence,

will not suffice." *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

As set forth above, Plaintiff alleges that he laid on the floor in pain for approximately twenty minutes before Lieutenant Holtz and the unnamed corrections officer took him to medical. It is apparent from the face of the complaint that when Lieutenant Holtz and the unnamed officer realized Plaintiff may have been injured, they sought medical care for him. Plaintiff has not plausibly alleged that any Defendant delayed or interfered with his treatment, or that he remained in his cell for an extended period of time before being taken to the infirmary. *See, e.g., Horne v. Thurman, et. al.*, Case No. 3:23cv449, 2024 WL 3997465, *2, 5-6 (E.D. Tenn. Aug. 29, 2024) (finding brief delay while corrections officers "drew the inference that Plaintiff needed medical care" after a fall on a prison transport bus insufficient to state a claim for relief under section § 1983). Additionally, although Plaintiff alleges that Defendant Holtz and the unnamed officer picked him up "contrary to medical protocol," Plaintiff has alleged no facts describing how he was picked up by these Defendants, and there is no basis for this Court to plausibly infer that these Defendants acted with anything but good faith in their effort to get Plaintiff off the floor. There are simply no facts in the complaint suggesting these Defendants had a sufficiently culpable state of mind tantamount to an intent to punish Plaintiff. As such, it is **RECOMMENDED** that this claim be **DISMISSED** against all Defendants.

Lastly, the Sixth Circuit distinguishes between cases "where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Thus, where a prisoner has received some level of medical care and the dispute is over the adequacy of the treatment, "federal courts are generally reluctant to second guess medical judgments and to

11

constitutionalize claims which sound in state tort law." *Id*. Additionally, "[i]n examining whether a claimed injury is 'sufficiently serious'" to sustain a claim for deliberate indifference, "courts look to the *effect* of any delay in treatment caused by an officer's inaction." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001) (emphasis in original.) Specifically, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)). *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.").

Here, Plaintiff received medical attention. The complaint states that Jane Doe II (nurse/medical staff) checked Plaintiff's vitals and examined his back, and Plaintiff was advised he could return to medical hourly as needed for continued evaluation. (Doc. 1-1, at PageID #s 10, 14). Although Plaintiff alleges he was not given ice or medication for pain, he has not alleged any detrimental physical effect from either the inadequacy of the care he received at the infirmary or the twenty minute delay in receiving medical care. Accordingly, these allegations are insufficient to evidence a deliberate indifference to his serious medical needs, and Plaintiff fails to state a claim for relief under 42 U.S.C. § 1983 concerning denial of medical care. It is therefore **RECOMMENDED** that this claim be **DISMISSED** against all Defendants.

5. *Placement in the Transitional Program Unit*

Finally, construing the complaint liberally and out of an abundance of caution, the Court finds an attempt by Plaintiff to establish a constitutional violation for being temporarily placed in

12

the Transitional Program Unit ("TPU"), which Plaintiff characterizes as "in the hole." (Doc. 1-1, at PageID #10). Plaintiff has attached his grievance, wherein he states that he requested to be placed in TPU because it was closer to medical. (*Id.* at PageID #14.) Plaintiff asserts that he remained in TPU as discipline for refusing the return to the flooded cell ("refusing to lock"). (*Id.* at PageID #15.) The grievance states Plaintiff remained at TPU from January 28, 2024, until January 31, 2004. (*Id.*)

Confinement in observation and/or segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Such confinement is not considered atypical and is significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts consider the nature and the duration of the stay in assessing whether the confinement is either atypical or significant, *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008), and accordingly, this type of conditions of confinement claim is "highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).

Regarding Plaintiff's stay in the TPU, the Court notes that it was Plaintiff who requested that he be temporarily housed there in order to have easier access to medical. And his stay was in fact temporary, as it lasted three days. Plaintiff does not allege that he was denied adequate food, clothing, shelter, recreation, or medical care while in the TPU, and he has not alleged any harm as a result of the conditions of the TPU. For these reasons, Plaintiff fails to state a viable claim for relief against any defendant.

**D. Conclusion**

For the foregoing reasons, Plaintiff fails to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983 against any Defendant in either an individual or official capacity. Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims pursuant to 28 U.S.C. §§ 1915A and 1915(e).

October 1, 2024                                                                          *s/Peter B. Silvain, Jr.*
                                                                                                        Peter B. Silvain, Jr.
                                                                                                        United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).